UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JAMIE DARRIEL GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-191-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jamie Darriel Gilbert filed this action pursuant to 42 U.S.C. § 405(g) seeking review of an administrative decision denying his application for supplemental security income. The district court transferred the action to the undersigned magistrate judge, but both parties did not consent to proceed before a magistrate judge. The undersigned has considered the parties arguments, the administrative record, and the applicable law and now recommends that the district court affirm the Commissioner's decision and dismiss this action.

**I.    Standards of Review**

A claimant will qualify for benefits if he meets the statutory definition of "disabled." The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2014). A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." *Id*. A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 1382c(a)(3)(B). The standard under which the Commissioner reviews a claim for supplemental security income involves a five-step sequential evaluation. 20 C.F.R. § 416.920(a)(4) (2014). Under the sequential evaluation, an administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

The court's standard of review in a Social Security appeal is deferential and limited to determining whether the Commissioner's decision is supported by substantial evidence from the record as a whole and whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

**II.     Statement of the Case**

Gilbert previously worked as an automobile body repair technician and an equipment mechanic's helper but stopped working because of back pain. (Tr. 41, 50.) According to medical records, he was involved in a car accident in his early twenties that he believed caused back pain that progressively worsened. (Tr. 213, 296.) He stopped working about ten years later at the age of 32. (*Id*., Tr. 41.)

After his application was denied at the initial and reconsideration stages, an ALJ held a hearing and issued a decision finding that Gilbert was not disabled at the fifth step of the sequential

evaluation process. The ALJ determined at the first step that Gilbert had not worked in almost two years. (Tr. 8.) At the second and third steps he found severe impairments, including "neck and back pain complaints"; evidence of mild degenerative changes in the thoracic spine with diagnosed radicular pain in the upper and lower extremities; complaints of right hand pain; obesity; diagnosed depression and anxiety; and a history of alcohol abuse but determined that the impairments did not meet or medically equal a listing in the Commissioner's regulations. (Tr. 8–9.)

The ALJ then determined Gilbert's residual functional capacity (RFC). The term "RFC" is used to indicate the most a claimant can do despite his impairments. 20 C.F.R. § 416.945(a)(1). In determining a claimant's RFC, the ALJ considers the claimant's ability to meet the physical and mental demands, sensory requirements, and other requirements of work. § 416.945(a)(4). In this case, the ALJ determined that Gilbert had the RFC to perform light work that was "simple" in nature and that would allow him the option to alternate between sitting and standing; require no constant use of the hands; involve no climbing, crawling, kneeling, or squatting; require only occasional stooping and crouching; no work with the general public; and only superficial contact with coworkers and supervisors. (Tr. 16–17.) Based on testimony from a vocational expert, the ALJ determined that Gilbert could not, given his RFC, perform his past work but that he could work as a shipping and receiving weigher, bakery line worker, and fruit distributor. (Tr. 17–18.) He consequently found that Gilbert was not disabled.

Gilbert contests the ALJ's decision on three grounds. He argues that the ALJ: erred in failing to find that his neck and back impairments meet or medically equal Listing 1.04(A), erred in failing to find that his mental impairments meet or medically equal Listing 12.04, and failed to properly consider the impact his depression and anxiety would have on his RFC.

3

**III.     Discussion**

    A.     *The ALJ's Step Three Determinations*

At step three of the sequential evaluation, the ALJ compares the claimant's impairment(s) with listings contained in appendix 1 of the regulations that are considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). If the Commissioner determines that the claimant's impairment(s) meet the duration requirement in the Social Security Act and that they also meet or medically equal the criteria of one of the listings in appendix 1, the claimant is presumed to be disabled and qualifies for benefits without further inquiry. *Id.* at 390. A claimant will not be presumed disabled under a listing in the Commissioner's regulations unless his impairments meet or equal each of the specified criteria of the listing at issue, and the burden is on the claimant to make this showing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

The first listing Gilbert claims he meets, Listing 1.04(A_, requires a showing of a disorder, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, or degenerative disc disease, that results in the compromise of a nerve root or the spinal cord. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04. The evidence must show the presence of nerve root compression that is "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." § 1.04(A).

As Gilbert points out, an MRI of the cervical spine showed "[d]esiccation of loss of normal water content within the C5-C6 disc. Small ventral bulging disc at this level without

4

lateralization or spinal stenosis." (Tr. 307; *but see* Tr. 273 (results from imaging at Covenant Lakeside Hospital were "unremarkable cervical spine").) Gilbert also argues that x-rays of his thoracic spine show osseous changes and chronic inflammatory changes that are consistent with facet arthrosis. On the other hand, it should be noted that an MRI of Gilbert's thoracic spine was normal at all disc levels with normal facet joint alignment, no herniation, and no stenosis. (Tr. 309; *see also* Tr. 371 (MRI the prior year showing same).)

Nonetheless, even if the court were to assume that the evidence shows a disorder of the spine that results in nerve root compression, the evidence does not show that Gilbert's impairments meet the remaining criteria of the listing. For example, there is no evidence of muscle atrophy associated with muscle weakness, which is required in the listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(A). Examination consistently showed normal muscle strength, tone, and stability. (Tr. 204, 215 (normal muscle strength); Tr. 265 (full muscle strength in all quadrants); Tr. 428 (no muscle wasting).) In addition, to the extent that Gilbert claims he suffers from nerve root compression as a result of problems in his lower back, he is required to show positive straight-leg testing. *Id.* However, the evidence shows that straight-leg testing was negative. (Tr. 215, 226, 240.)

The burden was on Gilbert to show that his spinal impairments met every one of the criteria included in Listing 1.04(A); the claimant must "meet *all* of the specified medical criteria." *See Randall v. Astrue*, 570 F.3d 651, 658 n.10 (5th Cir. 2009) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in the original)). Gilbert did not meet that burden.

Nor did Gilbert meet his burden of showing that his mental impairments met Listing

12.04, the listing for affective disorders. The listing encompasses impairments that are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. In order to meet the criteria for listing 12.04, the claimant must show that his impairments meet both the "A" and "B" criteria or the "C" criteria of the listing. Gilbert claims he meets the "A" and "B" criteria. *Id*.

Under the "A" criteria, the claimant must show that he suffers from depression and at least four of nine listed attendant symptoms or that he suffers from manic syndrome with certain attendant symptoms or that he suffers from bipolar syndrome with a history of episodic periods of both manic and depressive syndromes. § 12.04(A). Gilbert claims his impairments met the "A" criteria because he has been diagnosed with depression and suffers from depression with symptoms of sleep problems, feelings of guilt and worthlessness, decreased energy, and anhedonia. In fact, William E. Hoke, Ph.D., a state examining physician, diagnosed Gilbert with major depressive disorder and noted that Gilbert reported sleep problems, feelings of guilt and worthlessness, decreased energy, and anhedonia. (Tr. 259.) Based on Dr. Hoke's diagnosis and Gilbert's report of his symptoms, Gilbert suffers from depression and experienced at least four of the symptoms listed under the "A" criteria.

The evidence does not show, however, that Gilbert's mental impairments meet or medically equal the "B" criteria. Under the "B" criteria the evidence must demonstrate that the claimant's mental impairments result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. § 12.04(B). Gilbert claims the evidence shows that he experiences marked difficulties in

maintaining social function and difficulties in maintaining concentration, persistence, and pace.

The evidence, however, does not show that Gilbert experiences marked difficulties in maintaining concentration, persistence, and pace. Leila Reddy, M.D., a consulting physician, found that Gilbert experienced moderate rather than marked limitations in maintaining concentration, persistence, and pace and she concluded that he was able to understand, remember, and carry out simple instructions and concentrate for extended periods of time. (Tr. 285, 292.) In addition, other examining physicians noted that Gilbert exhibited good concentration. (Tr. 265, 332.) Finally, the regulations direct that concentration may be assessed by means such as requiring the claimant to subtract serial sevens or serial threes from 100. § 12.00(C)(3). Dr. Hoke reported that Gilbert was able to complete serial sevens to one level and serial threes to four levels. (Tr. 260.) Based on the medical opinion from Dr. Reddy and the other medical evidence, Gilbert does not experience marked limitations in maintaining concentration, persistence, and pace.

Presumptive disability was therefore not called for in his case, and the ALJ did not err in proceeding to the final steps of the sequential disability evaluation. *See Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (noting that the claimant is "conclusively presumed" to be disabled if the criteria of a listing is met and, if not, the evaluation proceeds to the subsequent step).

B.   *The ALJ's Consideration of Gilbert's Mental Limitations*

At the final steps of the sequential evaluation, the ALJ is required to incorporate mental limitations into his RFC determination and the hypothetical question he poses to the vocational expert. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The ALJ did so by limiting Gilbert to simple work that does not involve working with the general public and that involves only

7

superficial contact with coworkers and supervisors and by incorporating these limitations into the hypothetical question he posed to the vocational expert. (Tr. 16–17, 50.) The ALJ's determination regarding Gilbert's mental limitations and the impact they would have on his ability to work is supported by substantial evidence. Although Dr. Hoke noted that Gilbert exhibited limitations in his "coping abilities," he also believed that counseling would benefit Gilbert. (Tr. 260–61.) Dr. Hoke documented that Gilbert's behavior was appropriate and his thought processes were "generally logical and goal-oriented." (Tr. 260.) Based on Dr. Hoke's report, Dr. Reddy determined that Gilbert was able to understand, remember, and carry out simple instructions, make simple decisions, and concentrate for extended periods of time. (Tr. 292.) State agency physicians "are experts in the Social Security disability programs"; therefore, the ALJ could rely on Dr. Reddy's opinion. SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996). The ALJ did so by incorporating the limitations Dr. Reddy found into the hypothetical question he posed to the vocational expert.

    C.    *The ALJ's Ultimate Conclusion*

"Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). Substantial evidence supports the ALJ's ultimate conclusion of non-disability.

Although the undersigned may sympathize with Gilbert in regard to his allegations of neck and back pain, the basis on which Gilbert grounds his claim of disability, as the ALJ found, his pain is not disabling. Pain alone does not establish disability. *Owens v. Heckler*, 770 F.2d 1276,

1281 (5th Cir. 1995) (citation omitted). Pain is disabling only if it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The evidence does not show the existence of such pain in this case. According to treatment notes from a pain specialist, Gilbert's neck pain improved significantly and although his thoracic pain continued to "remain symptomatic," Gilbert experienced "minimal pain" in that area. (Tr. 428.) According to examination notes from another pain specialist, Gilbert's pain was not constant and unremitting; in fact, the doctor discussed "daily walking for stress relief" with Gilbert. (Tr. 189.)

Reports that Gilbert gave to examining physicians and statements he provided during the administrative proceedings demonstrate the same. Gilbert reported that he occasionally drives, shops for groceries, and attends church; does housework, including dusting and vacuuming; mows the yard and does house repairs, although these tasks require a great deal of time because he must take rest breaks; takes and picks up his children from school everyday; cares for the family dog; makes dinner; and gets his children ready for bed. (Tr. 43–44, 146, 148–49, 259.) In addition, at the time he filed his application, Gilbert reported that, although he was not often able to do so, he went fishing with his children and repaired old cars. (Tr. 149.)

Finally, the medical evidence supports the ALJ's determination that Gilbert can perform the physical requirements of light work with a sit/stand option and the other limitations enumerated in the ALJ's decision. Gilbert reported that he could sit for 20 minutes, stand for 20 minutes, and occasionally lift 30 pounds. (Tr. 264.) An examining physician found that Gilbert had mild limitations in lifting, standing, and walking and could be expected "to sit normally in an 8 hour workday with normal breaks." (Tr. 267.) Although the doctor reported that Gilbert could only occasionally use his right hand for handling, grasping, and fingering, the ALJ limited Gilbert to work that would not involve constant use of the hands. (*Id*.; Tr. 17.) For these reasons, the ALJ's

decision is supported by substantial evidence in the record.

## IV.  Recommendation

Based on the discussion in this Report and Recommendation, the undersigned recommends that the district court affirm the Commissioner's decision and dismiss this action.

## V.  Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:    July 14, 2014.

*[signature]*
NANCY M. KOENIG
United States Magistrate Judge

10